IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 6:18-cv- 3177 ) |
| NEW PRIME, INC. D/B/A PRIME, INC., | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment policies and practices based on sex and provide appropriate relief to Melinda Huerta. As alleged with greater particularity below, Defendant New Prime, Inc. d/b/a Prime, Inc. ("Prime") created a hostile work environment for Huerta by allowing one of its drivers, Eric Weekley, to continue driving with its employees after it knew he had sexually harassed another employee, without warning its employees about his prior harassment, and otherwise failing to take prompt and effective remedial action to prevent and end his harassment of Prime's female drivers.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(g) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the illegal employment practices at issue were committed within the jurisdiction of the United States District Court for the Western District of Missouri.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission (the "Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3).

4. At all relevant times, Defendant Prime has continuously been a Nebraska corporation doing business in the State of Missouri and has at least 15 employees.

5. At all relevant times, Prime has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. On April 3, 2017, Melinda Huerta filed a charge of discrimination with the Commission alleging that Prime violated Title VII.

7. On March 21, 2018, the Commission issued to Prime a Letter of Determination finding reasonable cause to believe that Title VII was violated and invited Prime to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged in communications with Prime to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Prime a conciliation agreement that was acceptable to the Commission.

10. On May 24, 2018, the Commission issued a Notice of Failure of Conciliation to Prime.

11. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12. Melinda Huerta, a woman, started working for Prime in July 2016 and has continued working for Prime to this day.

13. Huerta started as an over-the-road driver trainee for Prime and completed her training in September 2016.

14. Huerta's sexual harassment training at Prime consisted of an approximately ten to fifteen minute computer questionnaire. If any questions are answered incorrectly, the program tells the test-taker the correct answer and then asks those questions again.

15. After Huerta completed her training with Prime, she wanted to drive on a two-driver team to gain additional experience. She asked two Prime managers for assistance in finding a co-driver but they both told her she had to find a co-driver on her own.

16. At Prime's on-site hotel, Huerta was approached by Eric Weekley, purportedly an independent contractor driver for Prime, who asked her to drive with him. Since she did not have any other options for a co-driver, she accepted.

17. Weekley had worked as a driver for Prime since at least 2012 and in 2016 he was a "Trainer" for Prime providing driving experience on his truck for new drivers that Prime was training.

18. In May 2016, Prime suspended Weekley as a trainer for six months after it determined he had sexually harassed a trainee. Although Prime suspended Weekley as a trainer, his overall pay was unchanged and Prime continued to pay him as a contractor.

19. Before Huerta accepted Weekley's offer to be his co-driver, she had no knowledge of his prior sexual harassment of a trainee.

20. Before Huerta started co-driving with Weekley, she informed Prime's Fleet Manager, Derek Hausman, as required, that she was going to co-drive with Weekley. Hausman knew about Weekley's history of sexual harassment and suspension, but he did not share that information with Huerta.

21. From October 4, 2016 until November 17, 2016, Weekley and Huerta drove together over-the-road.

22. While driving with Weekley from October to November 2016, Huerta was employed by Prime as a company driver.

23. As soon as they were on the road, Weekley began intimidating Huerta and making sexually provocative comments to her.

24. Weekley told Huerta that he had previously been caught with a gun on his truck.

25. Weekley told Huerta that he wanted to work with somebody, make money and "fuck" at the same time. Huerta immediately told Weekley that she was not the "girl" for that.

26. Weekley showed Huerta pictures he had surreptitiously taken of another woman in his truck as she was climbing into the top bunk.

27. Weekley repeatedly made crude comments to Huerta that he wanted sex. For example, Weekley said to Huerta, "I'm so horny I could pull over and fuck a hole in a tree," "I could fuck your brains out," and "my girlfriend likes to be choked. I bet you are a freak."

28. Weekley told Huerta that he had been arrested for rape and was under investigation for the death of his wife.

29. Huerta repeatedly told Weekley that his sexual comments were not welcome to her.

30. Weekley tried to intimidate and control Huerta. Weekley refused to give her time to take care of personal needs or shower. Whenever Huerta got off the truck, he would tell her they were late and that she needed to get back on the truck.

31. Weekley told Huerta if she got off his truck she would be fired and lose her CDL license.

32. For six weeks, Huerta was afraid to report Weekley's harassment to Prime because she feared for her safety and that she would be fired and lose her CDL. Huerta also feared that Prime would put negative information in her DAC report, which she understood to be a detailed summary of a truck driver's work history that trucking companies can access and use to decide whether to hire drivers. And Huerta felt that she could not afford to lose her job because of the money she would owe Prime for her training.

33. In November 2016 in Orlando, Florida, Huerta decided to report Weekley's harassment. When Weekley left the truck, Huerta contacted Prime's training specialist and female driver liaison, Brooke Mosley.

34. Mosley told Huerta to get out of the truck and sent a truck to pick her up and return her to Prime's Missouri headquarters. Mosley assured Huerta that Prime would guarantee her pay for six months.

35. Upon her return to Prime's headquarters, Huerta asked to be placed on another truck right away to keep working, but Prime failed to immediately place her on another truck.

36. Prime eventually placed Huerta on another truck after she missed significant work and lost income during that time.

37. When Prime placed Huerta on another truck, it required her to "downgrade" her position to a "B" seat, effectively demoting her.

## **SEXUAL HARASSMENT**

38. The Commission repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

39. Weekley's repeated use of sexually harassing language and behavior toward Huerta was intentional and intended to negatively impact her.

40. Weekley's sexually harassing language and behavior was sufficiently severe or pervasive to create a sexually hostile work environment for Huerta.

41. Prime knew that a female driver trainee previously reported being sexually harassed by Weekley.

42. Although Prime knew Weekley had sexually harassed other women and had the power and ability to exercise sufficient control over Weekley's conduct, it failed to take prompt, effective remedial action to prevent his sexually harassing, threatening behavior and it failed to warn Huerta of Weekley's history of engaging in sexually harassing conduct with a female driver trainee.

43. Prime refused to promptly or effectively discipline Weekley and allowed him towork with Huerta, without warning her, even after it became aware of his sexually harassing conduct.

44. Prime unlawfully deprived Huerta of equal employment opportunities because of her sex in violation of 42 U.S.C. § 2000e–2(A)(1).

45. As a direct and proximate result of Prime's violation of 42 U.S.C. § 2000e–2(A)(1), Huerta suffered actual damages including but not limited to lost wages, humiliation, emotional distress and loss of enjoyment of life.

46. Prime's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Huerta's federally-protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Issue a permanent injunction enjoining Prime, its officers, agents, servants, employers, attorneys, and all persons in active concert or participation with them from engaging in any employment practice which discriminates on the basis of sex, including harassment or the creation of a hostile work environment based on sex, in violation of 42 U.S.C. § 2000e–2(a)(1);

B. Order Prime to institute and carry out policies, practices, and programs that provide equal employment opportunities for female workers and eradicate the effects of its past and present unlawful employment practices;

C. Order Prime to make Huerta whole by providing appropriate back pay and benefits with prejudgment interest, in amounts to be proved at trial, and other

        affirmative relief necessary to eradicate the effects of Huerta's unlawful employment practices;

D.      Order Prime to make Huerta whole by providing compensation for past and future pecuniary and nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment and inconvenience, in amounts to be determined at trial;

E.      Order Prime to pay Huerta punitive damages for its malicious conduct or reckless indifference to Huerta's federally protected rights described above, in amounts to be determined at trial;

F.      Grant such other and further relief as this Court deems necessary and proper in the public interest; and

G.      Award the Commission its cost of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

## PLACE OF TRIAL

The Commission requests Kansas City, Missouri, as the place of trial.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN, MO Bar #46520
Regional Attorney
andrea.baran@eeoc.gov

C. FELIX MILLER, MO Bar #28309
Supervisory Trial Attorney
St. Louis District Office
1222 Spruce St., Room 8.100
St. Louis, MO 63103
Phone: (314) 539-7910
Fax: (314) 539-7895
felix.miller@eeoc.gov


s/ *Dayna F. Deck*
DAYNA F. DECK, MO Bar #39033
Senior Trial Attorney
Kansas City Area Office
400 State Ave., Ste. 905
Kansas City, KS 66101
Phone: (913) 551-5848
Fax: (913) 551-6957
dayna.deck@eeoc.gov


ATTORNEYS FOR PLAINTIFF EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION