# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 6:18-03177-CV-RK ) |
| NEW PRIME INC, D/B/A PRIME, INC.; | ) ) ) |
| Defendant. | ) |

## ORDER DENYING SUMMARY JUDGMENT

This is a sexual harassment case brought by Plaintiff the Equal Employment Opportunity Commission ("EEOC") and Intervenor-Plaintiff Melinda Huerta. Before the Court is Defendant New Prime, Inc.'s ("Prime's") motion for summary judgment. (Doc. 94.) The Court heard oral arguments on the motion after full briefing. (Docs. 95, 99, 102, 138, Oral Argument Tr.; *see also* Doc. 129, Pretrial Conference Tr. (discussing summary judgment).) For the reasons stated below and in open court during oral arguments (Doc. 138), the motion is **DENIED**.

### Background

The following facts are taken from the parties' statements of uncontroverted material facts and drawn in the light most favorable to Plaintiffs. (Docs. 99, 102.) Huerta is a truck driver employed by Prime. After she completed her training with Prime, she arranged to co-drive with Eric Weekley on his truck because she still was not comfortable driving a truck by herself. Before Huerta and Weekley started driving together, they met with their fleet manager at Prime, Derek Hausman. (Doc. 99-3, Hausman Dep. at 99:11-15.) At the time, Hausman knew about previous allegations that Weekley had sexually harassed a trainee. (*Id.* at 100-102.) Hausman participated in the prior sexual harassment investigation and was aware Weekley was no longer allowed to train drivers. However, because Hausman believed this was confidential information that could not be disclosed to Huerta (now a non-trainee), he did not tell her about the prior allegations, and he ultimately signed off on her driving with Weekley. (*Id.* at 102:9-103:2; Doc. 99-15, Pay Agreement signed by Weekley, Huerta, and Hausman.)

Huerta claims that Weekley continually sexually harassed her while she was on his truck. According to Huerta, Weekley asked her for sex and made sexual comments every day, a couple

times a day, for five out of the six weeks they drove together. Huerta claims that she repeatedly rejected Weekley's advances and objected to all of his comments. Huerta also stated in her deposition that Weekley told her he had been caught with a gun on his truck (Doc. 99-1 at 35) and that he had previously been arrested for rape. He also insinuated to her that he had killed his wife. According to Huerta, Weekley told Huerta she would lose her job if she got off the truck, and she felt physically threatened by Weekley at times when she suggested she would not continue to drive with him. Huerta claims she was scared she would lose her job if she reported Weekley's behavior, and she believed if she just left the truck she would be fired and have nowhere to go or stay safely.

Huerta eventually reported Weekley's conduct to Prime when a friend insisted that she do so, and she was removed from Weekley's truck and given a ride to Springfield, Missouri. She remains an employee of Prime. Plaintiffs filed this lawsuit seeking damages and injunctive relief under Title VII of the Civil Rights Act of 1964, and Prime has filed a motion for summary judgment, which Plaintiffs oppose.

**Legal Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted).

**Discussion**

To establish a hostile work environment claim under Title VII, Plaintiffs must show that (1) Huerta is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was so severe or pervasive that it affected a term, condition, or privilege of her employment; and (5) Prime knew or should have known of the harassment and failed to take appropriate remedial action. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 965-66 (8th Cir. 1999). Prime argues that Plaintiffs cannot satisfy the second element (unwelcomeness) and the fourth element (severity or pervasiveness). Although the evidence at trial may show that Prime is correct, the Court cannot resolve Plaintiffs' claims as a matter of law on the present record.

I.     **Unwelcomeness**

Prime argues that Plaintiffs cannot show unwelcomeness because she engaged in behavior similar to Weekley's while she was on the truck. Conduct is considered unwelcome if the plaintiff "neither solicited it nor invited it and regarded the conduct as undesirable or offensive." *Scusa*, 181 F.3d at 966. "The proper inquiry is whether [the plaintiff] indicated by [his or her] conduct that the alleged harassment was unwelcome." *Id.* (quotation marks and citations omitted). "[T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact . . . ." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986).

Here, Prime points to text messages showing that Huerta used sexually charged language while she was on the truck; that she once told Weekley about a sexual encounter she had with her boyfriend; and that on one occasion, she voluntarily asked Weekley to join her at a bar. Prime also argues that Huerta welcomed Weekley's sexual advances by sending sexually explicit texts to her boyfriend even though she believed Weekley was monitoring her texts.

This issue cannot be resolved on the present record. The text messages cited by Prime do not definitively show that Huerta was inviting Weekley's daily requests for sex. To the contrary, some of her text messages show that she affirmatively told Weekley she was not interested in a sexual relationship with him and that she wanted to keep their relationship focused on making money. The text messages also do not give the Court a complete picture of the atmosphere on Weekley's truck. Although some of Huerta's language can accurately be described as sexually charged, Prime's lead example was clearly meant as a rejection of Weekley's advances.[1] And although Huerta apparently gave Weekley some details about a sexual encounter she had with her boyfriend, the Court cannot discern how much detail was given or with what inflection, tone, or demeanor. Live testimony will be necessary for the Court to determine whether the unwelcomeness question is submissible to the jury. *See McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979) (discretion to deny summary judgment and further develop the record at trial); *Burlison v. Warner-Lambert Co.*, 842 F.2d 991, 992 (8th Cir. 1988) (same); *Taylor v. Truman Med. Ctr.*, No. 03-00001-CV-W-HFS, 2006 WL 2796389, at *3 (W.D. Mo. Sept. 25, 2006) (denying summary judgment, despite apparent deficiencies in the

---

[1] Huerta said to Weekley, "I wouldn't touch you with Jenna Jamison's [expletive]." (Doc. 95 at 8.)

plaintiff's case, because the record was inconclusive); Fed. R. Civ. P. 50(a) (judgment as a matter of law when no reasonable jury could find for the plaintiff after the presentation of evidence).

The primary cases cited by Prime do not persuade the Court otherwise. In *Elkins v. Miller County, Arkansas*, 2019 WL 5399516, at *5 (W.D. Ark. Oct. 22, 2019), the plaintiff (a patrol officer) failed to cite any record evidence showing that she regarded the behavior of her patrol partner as undesirable or offensive at the time it occurred. The undisputed facts also showed that the plaintiff brushed off the defendant's repeated sexual advances by shopping for lingerie in the defendant's presence and accepting his invitation to ride four-wheelers on one occasion. *Id.* Unlike in *Elkins*, Plaintiffs have submitted evidence showing that Huerta regarded Weekley's advances as undesirable or offensive at the time they occurred. Specifically, there are text messages in the record suggesting that Huerta told Weekley she wanted to keep the relationship professional, and she stated in interrogatory responses that she objected to all of Weekley's comments. Although Huerta apparently invited Weekley to a bar on one occasion, the Court disagrees that this necessarily means she welcomed his sexual advances.

In *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012), the plaintiff "failed to send a consistent signal" that the defendant's name-calling (due to the plaintiff's low intelligence allegedly in violation of the Americans with Disabilities Act) was unwelcome because the plaintiff had engaged in similar types of name-calling. Here, it is far from clear on this record that Huerta's actions indicated to Weekley that he was welcome to ask her for sex everyday—especially given that she told him she wanted to keep their relationship professional.

For essentially the same reason, this case is also unlike *Pimentel v. St. Louis Public Schools*, No. 4:08-cv-1477-TIA, 2011 WL 128788, at *12 (E.D. Mo. Jan. 14, 2011). The plaintiff in that case allowed the alleged harasser "to kiss her, hug her and touch her without objection on a number of occasions." *Id.* Here, the evidence before the Court does not establish that Huerta reciprocated or accepted Weekley's advances.

Accordingly, the Court cannot conclude on the present record that Plaintiffs' case fails as a matter of law on the unwelcomeness issue.

## II. Severity or Pervasiveness

Prime argues that the alleged harassment was not so severe or pervasive that it affected a term, condition, or privilege of Huerta's employment. "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight."

4

*Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1077 (8th Cir. 2006). "[T]he standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) (citations omitted). This inquiry has both an "objective" and a "subjective" component, meaning the harassment must be severe or pervasive enough "to create an objectively hostile or abusive work environment[,] and the victim must subjectively believe her working conditions have been altered." *Id.* at 1056 (quotation marks and citations omitted). "In judging whether a reasonable jury could find the harassment to be pervasive or severe enough to alter the terms of employment, [the Court] look[s] at the frequency with which the purported harassment occurred, its severity, whether it was physically threatening or humiliating, and the extent to which it interfered with the plaintiff's job performance." *Powell*, 445 F.4d at 1077.

Here, the record does not conclusively show a lack of severity or pervasiveness. It is undisputed that Weekley requested sex from Huerta more than once every day for several weeks. On this record, Weekley's actions seem like more than the type of passing rudeness or unpleasantness inherent in the "rough edges" of day-to-day life. Furthermore, although it appears there were no overt threats in connection with Weekley's sexual comments, Huerta felt physically threatened by him at times—and he referenced a gun, told her he had been accused of rape, and insinuated that he had killed his wife.

Prime suggests that the alleged misconduct was not severe enough because Weekley never touched her and because her text messages show that she was more bothered by Weekley's other actions, such as not letting her shower often enough and allowing management to "walk all over" him. The law is clear that an employee need not be touched to sustain a sexual harassment claim. *Wright v. Rolette Cty.*, 417 F.3d 879, 885 (8th Cir. 2005). Furthermore, as discussed above regarding unwelcomeness, the Court cannot derive Huerta's mental state or the atmosphere on the truck simply by reading Huerta's text messages.

Finally, Prime argues that the Eighth Circuit and other courts have sustained summary judgment despite even more harassing behavior. *E.g.*, *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934-35 (8th Cir. 2002) (describing cases involving egregious behavior where the courts found no severity or pervasiveness); *Blomker*, 831 F.3d at 1057 (same); *Powell*, 445 F.3d at 1077 ("In other cases, we have held that conduct more egregious than what is alleged to have occurred here could not support a sexual harassment claim."). Those cases are unlike this one for two reasons.

First, none of those cases involved daily, repeated requests for sex. There were five incidents of harassing behavior over a two-year period in *Duncan*; seven incidents over a three-year period in *Blomker*; and "several" instances over a period of months in *Powell*. The holdings in those cases are consistent with the notion that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Blomker*, 831 F.3d at 1057 (quotation mark and citation omitted). In this case, it seems Weekley's repeated sexual advances amounted to more than simple teasing and were continual rather than offhand or isolated.

Second, none of those cases addressed a truck-driving scenario. This case is more like *Jenkins v. University of Minnesota*, 838 F.3d 938, 945 (8th Cir. 2016). In *Jenkins*, the plaintiff and the alleged harasser were conducting research alone together in the Alaskan wilderness, and the Eighth Circuit stated as follows in finding that summary judgment was improper: "[a]ctions that might not rise to the level of severe or pervasive in an office setting take on a different character when the two people involved are stuck together for twenty-four hours a day with no other people—or means of escape—for miles around." *Id.* The same logic applies here. Huerta was in a confined space in Weekley's truck almost constantly, in remote locations throughout the United States, with limited options for escape. Although the evidence may show differently at trial, the Court cannot conclude as a matter of law on the present record that Weekley's conduct was not severe or pervasive enough to sustain a sexual harassment claim.[2]

## Conclusion

Accordingly, for the reasons stated above and in open court during oral arguments, Prime's motion for summary judgment is **DENIED**. (Doc. 94.)

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
DATED: February 4, 2020   UNITED STATES DISTRICT COURT

---

[2] Prime's suggestions in support of its motion state in a footnote that summary judgment is also appropriate for lack of a triable issue on element five of Plaintiffs' claims—whether Prime knew or should have known about the harassment and failed to take appropriate remedial action. (Doc. 95 at 17 n.4.) However, Prime's reply brief states that element five is not the subject of its motion. (Doc. 102 at 33.) Accordingly, this argument has been abandoned for purposes of summary judgment, and the Court declines to consider it *sua sponte* because Prime has not provided any briefing on the issue.